UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARGARET POLIDORO and DOMINICK POLIDORO,

      Plaintiffs,

v.

CHUBB CORP., CHUBB & SON, INC., CHUBB INDEMNITY INSURANCE CO., PACIFIC INDEMNITY, and JAY J. WINOKUR, M.D.

      Defendants.

---

04 Civ. 3184

MODIFIED MEMORANDUM DECISION AND ORDER

STEPHEN C. ROBINSON, District Judge:

This case presents a question of whether the causes of action brought by a plaintiff who was injured on the job are proper. Plaintiff claims she was denied health benefits and compensation payments despite an agreement with Defendants. Plaintiff further claims the doctor whose report led to the denial is liable. Defendants have moved to dismiss many of the Plaintiff's state law claims and her claim for punitive damages. The Court finds that some of the Plaintiff's causes of actions must be dismissed, and the action against the doctor must be dismissed. The Court denies Defendants' attempt to block the Plaintiff from seeking punitive damages.

### I. Background

#### A. Factual Summary

The facts according to the complaint are as follows. On June 15, 1998, Margaret Polidoro (the "Plaintiff") fell while at work injuring her left wrist and right knee. Plaintiff filed a Workers' Compensation claim. Under the Workers' Compensation

insurance contract with her employer, Pacific Indemnity ("Indemnity") was to pay for Plaintiff's related medical treatment and compensate Plaintiff's temporary and permanent disability, if any. On May 7, 1999, Plaintiff's previously injured knee buckled and Plaintiff fractured her right foot. On April 3, 2000, Pacific terminated Plaintiff's ongoing physical therapy regimen. At a Workers' Compensation hearing on August 23, 2000, Pacific allegedly entered into an agreement with Plaintiff to reduce her weekly compensation payment in exchange for authorization for continued physical therapy. Pacific appealed the decision to the Workers' Compensation Appeals Panel which affirmed the agreed to reward. Pacific did not pay the outstanding bills until May 2002.

Allegedly due to the termination of physical therapy treatment and weakening of the joints damaged in the first fall, Plaintiff suffered a broken left hip, torn meniscus of the right knee on March 27, 2001. Plaintiff now requires both left hip replacement surgery and right knee replacement surgery.

Plaintiff puts forth nine causes of action, dealt with in more detail below, including a loss of consortium claim by Plaintiff's husband, Dominick Polidoro and a claim against Jay Winokur, M.D. ("Winokur"), a physician whose exam and report stating that her left wrist and right knee had recovered caused Pacific to deny physical therapy treatment to Plaintiff. Plaintiffs seek $16 million in compensatory damages and $15 million in punitive damages, plus an amount two times the total amount of expenses covered by Medicare.

### B. Procedural Posture

The Plaintiffs originally filed suit in the Supreme Court of the State of New York, Westchester County. Under 28 U.S.C. § 1446(a), Pacific and another former defendant

removed the case to the United States District Court for the Southern District of New York on April 26, 2004, based on diversity of citizenship among the parties and because the matter in controversy exceeds the sum of $75,000 exclusive of interests and costs. On May 10, 2004, Plaintiffs filed an amended complaint. The Plaintiffs voluntarily dismissed the case as against Chubb Corp., Chubb & Son, Inc., and Chubb Indemnity Insurance, Co., on May 28, 2004, leaving only Pacific and Winokur as defendants. Both remaining defendants have filed separate motions to dismiss claims pertaining to each respective defendant.

## II.     Analysis of Motions

### A.     The 12(b)(6) Motion Standard

Pacific has moved to dismiss several of Plaintiffs' claims against Pacific under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Winokur has moved to dismiss all of Plaintiffs' claims against Winokur under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The inquiry is whether Plaintiffs properly stated a claim. The Court looks to the face of the pleadings. Dismissal of a complaint pursuant to F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) and see *Cooper v. Parsky* 140 F.3d 433, 440 (2d Cir. 1998). For purposes of deciding a 12(b)(6) motion, the well-pleaded factual allegations of the complaint are assumed to be true. *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 87-88 (2d Cir. 1999). Plaintiff's allegations should be read liberally and construed in the light most

favorable to them. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981); *Schuer v. Rohdes*, 416 U.S. 232, 235-37 (1974).

**B.     Pacific's 12(b)(6) Motion**

Pacific moves to dismiss four of Plaintiff's causes of action and Plaintiffs' claims for punitive damages. First, Pacific argues Plaintiff's negligence claim should be dismissed because there is no tort duty of care between an insurance company and its insured. Pacific cites *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308 (1995), for the proposition that under New York law no tort duty of care flows to the insured separate from the insurance contract. Pacific also points to *Brown v. The Paul Revere Life Ins. Co.*, 2001 U.S. Dist. LEXIS 16626 (S.D.N.Y. 2001), which followed *New York University*: "The claim that plaintiff seeks to add merely alleges that defendant breached its contract intentionally, pursuant to an alleged policy of breaking disability insurance contracts in order to avoid the payment of full benefits. Assuming the truth of these allegations, they do not allege a tort independent of the contract and are, therefore, indistinguishable from similar allegations found to be insufficient in *New York Univ[ersity]*...." *Brown v. Paul Revere Life Ins. Co.*, 2001 U.S. Dist. LEXIS 16626, 9-10 (S.D.N.Y. 2001).

In this case, Plaintiff similarly claims Pacific denied a benefit, namely physical therapy, in breach of the insurance contract. Plaintiff counters that although admittedly the standard is strict and a remedy is rarely available, a strong public policy interest exists to protect people and property from physical harm. Plaintiff's argument is unpersuasive. The claim presented by Plaintiff is interchangeable with the claims found to be invalid by

4

the New York Court of Appeals and the United States District Court for the Southern District of New York. Finding that Plaintiff's negligence claim cannot stand independent of her contract claim, Plaintiff's first cause of action for negligence is dismissed.

Second, Pacific attacks Plaintiff's fourth cause of action under tort contending New York law does not recognize a tort claim for bad faith denial of insurance coverage. This claim was rejected in *New York University* and *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 634 (1994). The *Rocanova* court stated the only way to recover damages for bad faith handling of insurance claims was if the complaint asserted "a claim of egregious tortious conduct directed at the insured claimant. Only then does an alleged pattern of bad-faith conduct attain legal significance insofar as it demonstrates that a public wrong would be vindicated by the award of punitive damages."

This Court took up the issue in *Manning v. Utils. Mut. Ins. Co.*, 2004 U.S. Dist. LEXIS 1674 (S.D.N.Y. 2004). In *Manning*, the plaintiff fell at work resulting in bodily injury in 1962. He received compensation benefits until 1968 and requested that benefits resume in 1973. Defendants refused. Plaintiff then brought a claim based on bad-faith refusal to pay benefits. The *Manning* court cited *New York University* and *Rocanova* for the proposition that said claim may only be brought in "very limited circumstances." *Id.* at 7. While there are a few lower court cases allowing such claims based on the "importance of ensuring the fair distribution of medical benefits," the *Manning* court did not find them controlling in the face of the New York Court of Appeals decisions.[1] *Id*. at

---

[1] The *Manning* court refers to: *Batas v. Prudential Ins. Co.*, 281 A.D.2d 260 (1st Dep't 2001) and *DeMarco v. Federal Ins. Co.*, 99 A.D.2d 114 (3d Dep't 1984). The *Batas* decision appears to be "an outlier or a new development in the law." *Manning* at 12, n. 2. The *Batas* plaintiff eventually failed to prove an injury

10-13. Following other previous decisions of this Court and the New York Court of Appeals, no claim for bad-faith refusal of benefits was recognized in *Manning*.

The *Manning* court ruling is followed. For the reasons stated above, Plaintiff's claim for bad-faith conduct in handling insurance claims is not legally-cognizable under New York law. Plaintiff alleges Pacific refused Plaintiff physical therapy treatment after said treatment had been delivered for a period of time. No "egregious tortious conduct" has been alleged. The facts presented do not meet the high standard necessary to enable the claim to go forward. Plaintiff's fourth cause of action is hereby dismissed.

Third, Pacific calls into question Plaintiff's fifth cause of action: intentional infliction of emotional distress. Pacific states the Plaintiff must allege four elements to establish this claim: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between conduct and injury; and (4) severe emotional distress. Pacific asserts Plaintiff's claim lacks factual allegations necessary to satisfy the necessary elements.

Pacific correctly describes the standard used for determining whether a claim satisfactorily alleges intentional infliction of emotional distress. "New York, which uses the Restatement (2d) of Torts definition of intentional infliction of emotional distress, requires that the conduct be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' The conduct must also be intentionally directed at the plaintiff and lack any reasonable justification." *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 558, 402 N.Y.S.2d 991,

---

stemming from the bad-faith refusal of benefits. *DeMarco* was decided prior to the *New York University* and *Rocanova* and is not controlling.

992-93, 373 N.E.2d 1215 (1978)). "The emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it." *Wiener v. UnumProvident Corp.*, 202 F. Supp. 2d 116, 122 (S.D.N.Y., 2002) (citing Restatement (2d) of Torts, § 46, comment j (1965). This standard is strictly applied in New York courts.

For example, Pacific points to *Cunningham v. Security Mutual Ins. Co.*, 260 A.D.2d 983 (3d Dep't 1999), in which the plaintiff claimed that her fire insurance carrier delayed in paying her for fire loss, leaving her without a home for over a year, and falsely accused her of arson and perjury. Yet, the court dismissed the plaintiff's claim for intentional infliction of emotional distress. In *Wiener*, the plaintiff alleged defendants' termination of her disability benefits caused "great mental anguish and other physical and emotional symptoms." 202 F. Supp. 2d at 122. The *Wiener* court found that the plaintiff's allegations while "troubling" do not rise to the level required by law to meet the threshold of extreme and outrageous conduct. *Id*.

The similar factual allegations in the instant case also do not rise to the level of extreme conduct as required by New York law. In fact, "of the intentional infliction of emotional distress claims considered by this Court [of Appeals], every one has failed because the alleged conduct was not sufficiently outrageous." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993). Reaching even the first element necessary to make an intentional infliction of emotional distress claim is very difficult in New York courts. The conduct alleged herein clearly does not meet the standard, and the claim must be dismissed.

Fourth, Pacific moves to dismiss Plaintiff's sixth cause of action under N.Y. Gen. Bus. Law § 349 for misleading, unlawful, and deceptive business practices. Pacific claims Plaintiff fails to allege deception toward the public as required under the statute: "[A]ny person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. § 349(h). The statute was designed to address "broad consumer-protection concerns." *Gaidon v. Mutual Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999). A claim under § 349 must charge conduct that is consumer oriented and have a broad impact on consumers at large. *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320 (1995); see also *MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997) ("The injury must be to the public generally as distinguished from the plaintiff alone."); *Gaidon*, 94 N.Y.2d at 343 ("As a threshold matter, in order to satisfy General Business Law § 349 plaintiff's claims must be predicated on a deceptive act that is 'consumer oriented.'" (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24-25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)).

The New York Court of Appeals held that "private contract disputes unique to the parties…would not fall within the ambit of the statute." *Oswego*, 85 N.Y.2d at 25. Consequently, the remaining question is whether Pacific's alleged acts were "consumer oriented" or aimed specifically at Plaintiff. In *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325 (S.D.N.Y. 2002), the plaintiff sued his insurance company under § 349 for

denial of disability benefits. The § 349 claim was dismissed because the complaint failed to allege any injury to the public.

Plaintiff's opposition brief offers little support for bringing a § 349 claim in the present circumstances. In fact, no argument is provided for how the allegations are consumer oriented. Plaintiff reiterates the alleged individual agreement (later allegedly broken by Pacific) made with Pacific reducing her monthly compensation payment in exchange for resuming physical therapy treatment. Plaintiff alleges Pacific violated a private agreement. The complaint omits facts establishing a "national policy," *MaGee*, 954 F. Supp. at 587, or an "extensive" scheme having "a broad impact on consumers at large," *Gaidon*, 94 N.Y.2d at 344. Therefore, Plaintiff failed to state a claim under § 349. Accordingly, Pacific's motion to dismiss Plaintiff's sixth cause of action is granted.

Fifth, Pacific moves to dismiss Plaintiffs' punitive damages claim because Plaintiffs cannot satisfy the requirements under New York law. Pacific states that punitive damages are only allowed in a breach of contract case when defendant's conduct is actionable as an independent tort citing *Wiener* and *New York University*. Pacific is correct. Plaintiffs acknowledge the requirement of an independent tort claim and point to the intentional infliction of emotional distress claim. As discussed above, this claim does not meet the high standards required under New York law. In supplemental letters briefs, Plaintiffs point to their third cause of action which is not otherwise at issue in this decision. Plaintiffs argue the third cause of action is for fraud. The amended complaint alleges that 1) Pacific made intentional misrepresentations; 2) Plaintiff relied upon the misrepresentation; and 3) Plaintiff suffered injury due to her reliance on the misrepresentation. Because Pacific has not moved to dismiss the third cause of action,

the Court declines to analyze it and determine its soundness. Therefore, the third cause of action is left untouched. The Court, therefore, assumes it is a viable tort claim, and the punitive damages claims remain intact.

### C. Winokur's 12(b)(6) Motion

Winokur moves to dismiss Plaintiff's seventh cause of action against Winokur, which, if granted, would remove Winokur from the case. Plaintiff and Winokur dispute the characterization of Plaintiff's claim against Winokur with Plaintiff asserting it is a negligence claim based upon Winokur's breach of his common law duty of care owed to Plaintiff, and Winokur contending it is a medical malpractice claim. The relevant difference in the motion to dismiss context is the statute of limitations: three years for negligence and two years and six months for medical malpractice. At the outset, it should be noted that Plaintiff admits she has no claim against Winokur under a theory of medical malpractice. Plaintiff and Winokur's agreement on this issue is not surprising. A medical malpractice claim is not available to Plaintiff because the required patient-physician relationship was not present. Therefore, it must be determined whether a negligence claim is possible in this context.

Plaintiff compares her claim to that found in *Chiasera v. Employers Mut. Liability Ins. Co. of Wisconsin*, 101 Misc. 2d 877 (1979). The plaintiff suffered a back injury on the job and submitted to a physician's examination pursuant to the request of his employer's Workers' Compensation carrier. Plaintiff allegedly sustained injury during the examination and brought an action against the physician under a theory of negligence. The Erie County Supreme Court admitted no appellate level decisions found the same but

nonetheless held "the physician is not free of all responsibility but still owes a duty of ordinary care not to injure the employee during the course of his examination. A breach of that duty will, therefore, give rise to a cause of action founded in ordinary negligence, subject to the three-year Statute of Limitations of CPLR 214." *Id*. at 879. The facts in *Chiasera*, however, differ from those at hand. Plaintiff does not allege she sustained injury at the hands of Winokur during the examination. Instead, Plaintiff alleges Winokur failed to prevent an injury by taking measures to address the risk of harm her knee posed. Pacific points out the salient fact that the *Chiasera* plaintiff brought his claim after being injured during the physician's examination and not allegedly because of action or inaction of the physician following the examination. Pacific's distinction is valid. The *Chiasera* case is not controlling in this matter.

Plaintiff also cites later cases *Miller v. Albany Medical Center Hospital*, 95 A.D.2d 977 (3d Dep't 1983) (failing to take measures to prevent the harm at risk may constitute actionable ordinary negligence when the judgment is more administrative than medical in nature) and *Finnegan v. Brothman*, 270 A.D.2d 808 (4th Dep't 2000) ("The [lower] court further erred in directing a verdict on the second cause of action alleging negligence because the jury could have rationally found that defendant's report caused plaintiff to lose insurance benefits and incur damages."). The *Miller* decision does not appear to have any bearing on the matter at hand. The *Miller* plaintiff sued the hospital under a negligence claim after allegedly being physically and sexually assaulted in the institution. The claim was based on the decisions of the medical staff to place the minor plaintiff with adult patients—more of an administrative decision than a medical one. Plaintiff in the instant case does not allege the harm stemmed from anything but a

medical decision disallowing Plaintiff to continue physical therapy. There being no alleged administrative aspect to that judgment, the *Miller* case is not helpful to this query.

The *Finnegan* decision, though, is more helpful. The *Finnegan* court examined a situation in which the plaintiff was seen by the defendant physician at the behest of the insurance company. Based on that examination, defendant assessed in a report to the insurance company that shoulder surgery was not required for the motor vehicle accident injury. The plaintiff alleged that the "defendant's report caused plaintiff to lose insurance benefits and incur damages." *Finnegan*, 270 A.D.2d at 809. Reversing the lower court's directed verdict on the claim, the *Finnegan* court supported the availability of a negligence claim stating that "[a]lthough defendant's examination was not paid for by plaintiff and was not conducted during the course of treatment or with intention of future treatment, defendant nevertheless owed a duty of reasonable care to plaintiff." *Id*. *See also Roth v. Tuckman,* 162 A.D.2d 941, 942 (3d Dep't 1990), *lv denied* 76 N.Y.2d 712.

The New York courts have found that "[a] doctor engaged only for the purpose of examining a person for workers' compensation or similar purposes is under a common-law duty to use reasonable care and his best judgment when conducting the examination." *Murphy v. Blum*, 160 A.D.2d 914, 915 (2d Dep't 1990). The duty, however, is limited in scope, *Finnegan*, 270 A.D.2d at 809, to only the duties "associated with the functions undertaken." *Murphy*, 160 A.D.2d at 915. In the instant case, Winokur, at the request of Plaintiff's insurance carrier, was to examine Plaintiff for the purpose of evaluating her previously injured knee to determine if it was necessary for physical therapy to continue. Winokur did examine Plaintiff's knee and, in a report to the carrier, concluded that no

more physical therapy was required. Plaintiff does not make a claim that Winokur failed to advise her as to an unrelated health problem as was the case in *Murphy*.[2] Therefore, Plaintiff may state a negligence claim against Winokur.

The final hurdle, however, for the Plaintiff is the statute of limitations. In a negligence case, a three-year statute of limitations applies under N.Y. CPLR 214. *See e.g.*, *Weiner v. Lenox Hill Hosp.*, 88 N.Y.2d 784 (1996). Plaintiff filed the instant action on March 22, 2004. Plaintiff argues that she meets the requirement because she commenced the action within three years of the left hip injury allegedly caused by Winokur's negligence in recommending that physical therapy be discontinued for her right knee injury. If that is the appropriate date of reference, then Plaintiff is correct. Winokur, on the other hand, advocates the statute of limitations has run. Winokur argues Plaintiff should have commenced her action within three years of the examination (March 30, 2000), or, at the very latest, three years from the date of Winokur's report (April 3, 2000).

The general rule is that the time period is measured "from the time the cause of action accrued to the time the claim is interposed." N.Y. CPLR 203(a). As for the timing of accrual, "[t]he Statute of Limitations begins to run at time of the commission of the alleged tortious act." *Bassile v. Covenant House*, 191 A.D.2d 188 (1st Dep't 1993) (holding that the cause of action for personal injury based on sex abuse accrued at time of

---

[2] The *Murphy* plaintiff, a referee, was examined by a National Basketball Association physician for the purpose of determining his fitness for the job. Plaintiff later suffered cardiac arrest. While the court acknowledged the availability of a negligence claim in general, the court found that the physician "was retained by the NBA solely for the purpose of advising it whether [plaintiff] would be physically capable of performing his duties as a referee and not to treat or advise the plaintiff." *Murphy*, 160 A.D.2d at 915. Therefore, plaintiff's claim was dismissed.

tortious act's commission, rather than time of "delayed discovery").[3] Plaintiff bases her claim on the allegedly negligent inactions of Winokur at the time of the examination or soon thereafter.[4] Plaintiff knew or could have known that Winokur recommended her physical therapy treatment be discontinued as of the date of his report. As of that date, Plaintiff reasonably could have been aware of the risk of harm to her without the continued treatment. The fact that a later injury allegedly occurred as a result of Winokur's decision only confirmed she indeed was at risk of harm. Plaintiff's awareness of the harm at a later date is irrelevant to the calculation of when the statute of limitations time period began. Plaintiff, therefore, failed to timely file her complaint of March 22, 2004, within the three-year statute of limitations set out in N.Y. CPLR 214. Accordingly, Winokur's motion to dismiss is granted.

### III.     Conclusion

Pacific's partial motion to dismiss is granted in part and denied in part. Pacific's motion to dismiss punitive damages claims is denied. The remainder of the motion to dismiss is granted. Winokur's motion to dismiss is granted. The Clerk of the Court is instructed to remove Winokur as a defendant in this case.

IT IS SO ORDERED.

Dated: White Plains, NY
       June 2, 2005

Stephen C. Robinson, U.S.D.J.

---

[3] It should be noted that this rule holds true in the medical malpractice context as well with only exceptions for when a doctor continues to treat a patient after the act of malpractice and when a foreign object is left in a patient. *Goldsmith v. Howmedica, Inc.*, 67 N.Y.2d 120, 122 (1986).

[4] Plaintiff makes the following specific factual allegations: Winokur failed to follow proper procedures, failed to perform proper testing, failed to confer with Plaintiff's treating physicians, failed to review x-rays and other diagnostic studies, and failed to review symptoms presented.